IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 24, 2011

**STATE OF TENNESSEE v. KEVIN R. LEWIS**

**Direct Appeal from the Criminal Court for Hamilton County**
**No. 271227      Barry A. Steelman, Judge**

_____

**No. E2010-01267-CCA-R3-CD Filed July 29, 2011**

_____

A Hamilton County jury convicted the Defendant of aggravated kidnapping, aggravated sexual battery, and aggravated assault. The trial court imposed an effective sentence of twelve years. The Defendant filed a motion for new trial, which the trial court denied. Defendant argues on appeal that he is entitled to unspecified relief because the State displayed his booking photos to the jury during closing arguments. After a thorough review of the record and applicable law, we conclude that the Defendant is not entitled to relief. As such, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JERRY L. SMITH and D. KELLY THOMAS, JR., JJ, joined.

Brian L. O'Shaughnessy, Chattanooga, Tennessee, for the Appellant, Kevin R. Lewis.

Robert E. Cooper, Jr., Attorney General and Reporter; Matthew Bryant Haskell, Assistant Attorney General; William H. Cox, III, District Attorney General; Neal Pinkston and C. Matthew Rogers, Assistant District Attorneys General, for the Appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the Defendant's sexual assault upon a woman to whom he gave a ride home from a nightclub. Based on this conduct, a Hamilton County grand jury indicted the Defendant for aggravated kidnapping, aggravated sexual battery, and aggravated assault. At trial, the State's evidence established that, in November 2008, the victim was at a nightclub celebrating her friend's birthday when an acquaintance introduced her to the

Defendant. The Defendant seemed "pretty cool," and she danced and talked with the Defendant for approximately an hour. Soon, the victim was tired and ready to leave, but her friend was not. The Defendant offered to give her a ride home, and she accepted. The victim had consumed only three alcoholic beverages by this point, so she was not staggering or otherwise unable to control her speech or movement.

The victim testified that, on the way to her home, the Defendant pulled the car into a parking lot and turned off the car. After he and the victim talked for a few minutes, the Defendant suddenly grabbed the victim by her ponytail and violently jerked her head down. At the same time, the victim felt the Defendant poke her with a knife. As the Defendant continued to try to force her head down, the victim grabbed the keys from the ignition and tried to stab the Defendant with the keys. The next thing the victim knew, the Defendant had pulled the victim by her ponytail out of the car through the passenger door and was holding her head down on the hood of the car. The victim testified that the Defendant pulled the victim's pants and underwear down, and he urinated on her body. The victim was screaming, and, because the Defendant had unfastened his belt, she believed the Defendant was going to rape her. Responding to a report of a loud disagreement between a male and a female, a police car pulled into the parking lot and shined its lights on the Defendant and the victim. Officer Deborah Dennison ordered the Defendant to step away from the victim. Rather than comply, the Defendant continued to kiss and stroke the victim's neck. When the officer repeated her command, the Defendant stepped away from the victim, who quickly ran to police. Police recovered a knife from the Defendant's car and arrested the Defendant.

At the close of the Defendant's trial, while the prosecutor delivered his closing argument, he grasped a sheet of paper that he had written notes on. The Defendant's booking photos and personal information appeared on the front side of the paper, which faced the jury. After the prosecutor finished his argument, defense counsel approached the bench and, outside the hearing of the jury, complained "for the record" about the State's display of the booking photos to the jury during closing argument, noting he did not believe the photos were "intentionally" displayed. The trial court noted that defense counsel did not make a contemporaneous objection to the display of the photos and announced that it would address the objection after defense counsel's closing argument. After defense counsel's closing argument, the trial court found that, because the prosecutor's podium was located eight to ten feet from the jury box, the jury was unlikely to have been able to identify the Defendant as the man photographed, though the trial court acknowledged that the prosecutor probably stepped between the podium and the jury box during his argument. The trial court further found that the writing accompanying the photos contained no "prejudicial" information and that the jury was already aware that the Defendant had been arrested and that, therefore, the display of the information did not prejudice the Defendant. The trial court found that the Defendant was not entitled to any form of relief based on the State's display of the

2

photographs, and it entered the sheet of paper containing the booking photos into evidence.

The jury convicted the Defendant of each of the offenses he was charged with committing: aggravated kidnapping, aggravated sexual battery, and aggravated assault. The trial court imposed an effective sentence of twelve years. This appeal ensued.

## II. Analysis

On appeal, the Defendant argues that he is entitled to unspecified relief based upon the State's display of his booking photos to the jury during its closing argument. He argues that, because his booking photos were never properly admitted into evidence during the trial, because they were introduced during the especially critical stage of closing argument, and because they bore identifying information, this case differs from cases in which courts have held that a properly admitted booking photo alone is not unduly prejudicial to a defendant. *See State v. Boyd*, 797 S.W.2d 598, 594 (Tenn. 1990) (citing *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983)); *State v. Weeden*, 733 S.W.2d 124, 126 (Tenn. Crim. App. 1987).

The State responds first that the Defendant waived the issue by failing to request a curative instruction. The State further argues that the display of the photos did not prejudice the Defendant because the jury was not close enough to read the information accompanying the photos and, even were it close enough, the information was not compromising because it did not suggest the Defendant had been arrested on a charge unrelated to this case. The State argues that, insomuch as the photos' display was not error, the trial court did not abuse its discretion in overruling the Defendant's objection to the display of the photos and that the prosecutor did not commit prosecutorial misconduct by displaying the photos.

The State is correct that the Defendant risked waiving review of this issue by failing to contemporaneously object and by failing to request a curative instruction. *See* Tenn. R. App. P. 36(a); *State v. Griffis*, 964 S.W.2d 577, 599 (Tenn. Crim. App. 1997). Nonetheless, we will address the merits of the Petitioner's claim.

As the Defendant correctly notes, a booking photo with no other identifying information does not alone lead to the reasonable inference that a defendant has prior criminal convictions and, therefore, its admission into evidence does not unduly prejudice a defendant under Tennessee Rule of Evidence 403(b). *See Boyd*, 797 S.W.2d at 594; *Weeden*, 733 S.W.2d at 126. In this case, the Defendant's booking photos were not entered as evidence but were instead inadvertently displayed by the prosecutor during his closing argument. Because the photos in this case were never admitted into evidence, the cases addressing the issues arising from the admission of such photos are not directly applicable

to this case because the jury never received the photos for examination. Instead, the rules regarding the discretion a trial court must exercise in controlling the course of closing arguments will govern our analysis. However, insofar as *Boyd* and *Weeden* deal with the danger of presenting a defendant's booking photo to a jury, these cases will inform our analysis of their inadvertent introduction during closing arguments.

We review this issue under the abuse of discretion standard. *State v. Hall*, 976 S.W.2d 121, 157 (Tenn.1998). "Courts have recognized that closing argument is a valuable privilege afforded to the State and the defense and have afforded wide latitude to counsel in arguing their cases to the jury." *State v. Cleveland*, 959 S.W.2d 548, 551 (Tenn. 1997) (citing *State v. Bigbee*, 885 S.W.2d 797, 809 (Tenn. 1994)). Tennessee Rule of Criminal Procedure 29.1(b) allows a closing argument to address any evidence introduced at trial.

At the close of arguments in this case, the trial court found that the jury was seated too far away from the prosecutor's podium to decipher any of the identifying information about the Defendant on the booking photos. Further, it found that, even had the jury deciphered the writing, the information did not suggest that the Defendant had prior convictions. Given its conclusions about the jury's proximity to the prosecutor and the nature of the information displayed, the trial court found that the display of the photographs did not prejudice the Defendant, and it overruled the Defendant's objection.

The sheet of paper at issue in this case contained one frontal-view photograph and one side-view photograph of the Defendant's head. Each photograph was approximately the size of a playing card. Listed beside the photographs were the Defendant's name, his physical description, and the date he was arrested, which was the day of the offense in this case. The jury was seated eight to ten feet from the prosecutor as he delivered his closing remarks, while at some point inadvertently displaying the photographs. As the Tennessee Supreme Court noted in *Weeden*, the danger of the jury seeing a booking photo of a defendant is that the jury "will infer that the photograph came from a prior criminal conviction." 733 S.W.2d at 126. First, the jury in this case is unlikely to have realized that the back of the notes the prosecutor clasped during his remarks bore the Defendant's photographs. Also, based on the distance between the photos and the jury, the possibility is very small that the jury could decipher any of the information accompanying the photos. Further, we agree with the trial court that, even had the jury been able to decipher the writing, the writing contained no information that was compromising to the Defendant: it simply set out the Defendant's name and personal information, and it identified the Defendant's day of arrest in this case, November 29, 2010. Thus, the jury could not infer from the photograph that the Defendant had a prior criminal conviction. *See id.* Because the Defendant has failed to establish that he was prejudiced by the inadvertent display of his booking photos, we conclude that the trial court did not abuse its discretion when it overruled the Defendant's objection. *See Hall*, 976

S.W.2d at 157.  He is not entitled to relief on this issue.

### III. Conclusion

After a thorough review of the record and applicable law, we conclude that the trial court did not err when it overruled the Defendant's objection to the prosecutor's inadvertent display of his booking photos during closing argument.  Accordingly, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE